JUL 11 1997

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

JUL 10 1997

NANCY DOHERTY, CLERK
By_____
Deputy

| | | |
|---|---|---|
| NORDAR HOLDINGS, INC. | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 3:96-CV-0427-H |
| | * | |
| WESTERN SECURITIES (USA) LTD. | * | |
| and WESTERN SECURITIES LTD. | * | Entered ON DOCKET |
| | * | JUL 11 1997    PURSUANT |
| Defendants. | * | TO F.R.C.P. RULES |
| | | 58 AND 79a |

## MEMORANDUM OPINION AND ORDER

On July 8, 1997, this case was tried before the Court without a jury. The Court

concludes that this case is controlled by an issue of law, and therefore will resolve the case in the

form of a Memorandum Opinion in lieu of detailed findings of fact and conclusions of law. Any

of the Court's conclusions herein that are more appropriately considered findings of fact are so

deemed.

## I. Background

This suit began as an action to recover under a guaranty on a promissory note.

Plaintiff NorDar Holdings, Inc. is a Florida corporation. Defendant Western Securities Limited

("WSL") is a Canadian corporation with its principal place of business in Calgary, Alberta,

Canada. Defendant Western Securities (USA) Limited ("Western USA") is a Colorado

corporation with its principal place of business in San Antonio, Texas. Former Defendant

Western Properties (Texas) Limited ("Western Properties") is also a Colorado corporation with

its principal place of business in San Antonio. WSL owns preferred stock in Western USA, which

78

in turn wholly owns Western Properties.

This suit is based on two related underlying transactions. In 1987, Western USA executed an original promissory note in favor of Commerce Savings Association. The original note was secured by a parcel of real property in Dallas, Texas. In 1988, Western USA conveyed the land to Western Properties. In 1991, in a settlement of separate litigation involving the Resolution Trust Corporation ("RTC"), Western Properties executed a second promissory note renewing and extending the original. As part of this 1991 renewal transaction, Western USA executed a limited guaranty agreement in the amount of $1.1 million. WSL, the ultimate parent of Western USA and Western Properties, did not execute the note or the guaranty and never owned the real property securing the debt.

After the 1991 renewal transaction, Commerce Savings was placed in RTC receivership. Through this receivership, all rights under the 1991 note and guaranty were eventually conveyed to NorDar. Western Properties defaulted on the note and the real property securing it was foreclosed upon, leaving a deficiency of approximately $1.8 million. NorDar instituted the present lawsuit to collect the deficiency. NorDar sued Western Properties as maker of the note and Western USA as guarantor. NorDar has also sued WSL, arguing that the Court should disregard the corporate fiction and hold WSL liable for the obligations of its affiliates.

On September 18, 1996, pursuant to a stipulation of the parties, the Court dismissed Western Properties as a defendant. On December 18, 1997, the Court entered summary judgment in the amount of $1,100,000 against Western USA based on the limited guaranty agreement. That left for trial only the issue of WSL's liability. At trial, Plaintiff sought to establish that WSL should be jointly and severally liable for the $1.1 million judgment entered against Western USA.

Plaintiff maintained that the Court should disregard the corporate fiction with respect to WSL based on the related Texas-law doctrines of alter ego and single business enterprise.[1]

## II. Texas Law on Disregard of the Corporate Entity

Texas law on disregard of the corporate entity has undergone substantial change over the last decade. In 1986, the Texas Supreme Court decided Castleberry v. Branscum, 721 S.W.2d 270, 272 (Tex. 1986), and set out six situations in which Texas courts will disregard the corporate fiction and hold shareholders liable for corporate obligations. Summarizing these six situations, the Fifth Circuit has articulated three theories of piercing the corporate veil under Texas law: 1) when the corporation is the alter ego of its shareholders or owners; 2) when the corporation is used for illegal purposes; or 3) when the corporation is used as a sham to perpetrate a fraud. See Villar v. Crowley Maritime Corp., 990 F.2d 1489, 1496 (5th Cir. 1993), cert. denied, 510 U.S. 1044 (1994). In Castleberry, the Texas Supreme Court went on to hold that when proceeding on the theory of sham to perpetrate a fraud, a plaintiff need prove only constructive fraud, rather than actual fraud. Castleberry, 721 S.W.2d at 273.

In 1989, in reaction to Castleberry, the Texas Legislature amended the Texas Business Corporation Act to provide that, in contract cases, a plaintiff seeking to pierce the corporate veil under the theory of sham to perpetrate a fraud must prove that the defendant-shareholder caused the corporation to perpetrate an actual fraud on the obligee for the direct, personal benefit of the shareholder. See TEX. BUS. CORP. ACT ANN. art. 2.21 & Comment of Bar Committee (West Supp. 1997). In 1991, the Legislature again amended Article 2.21 to provide that the actual fraud

---

[1] The parties stipulated at the pre-trial conference on July 7, 1997, that Texas corporate law governs this case.

3

requirement also applies to plaintiffs seeking to have the court disregard the corporate fiction on the alter ego theory or "other similar theory." Id.

Both the Fifth Circuit and intermediate Texas courts have confirmed that the amendments to Article 2.21 require a showing of actual fraud in order to pierce the corporate veil on the alter ego theory. Thrift v. Hubbard, 44 F.3d 348, 353 (5th Cir. 1995); Western Horizontal Drilling v. Jonnett Energy Corp., 11 F.3d 65, 68 & n.4 (5th Cir. 1994); Farr v. Sun World Sav. Ass'n, 810 S.W.2d 294 (Tex. App.—El Paso 1991, no writ); see also Atlantic Richfield Co. v. The Long Trusts, 860 S.W.2d 439, 445-47 (Tex. App.—Texarkana 1993, writ denied).

The Court concludes that the statute, as amended, also requires actual fraud in order to disregard the corporate entity under the single business enterprise theory. Under Texas law, single business enterprise is a doctrine — separate from piercing the corporate veil — that allows the court to impose joint liability when two corporations are not operated as separate entities and integrate their resources to achieve a common purpose. Old Republic Ins. Co. v. Ex-Im Servs. Corp., 920 S.W.2d 393, 395-96 (Tex. App.—Houston [1st Dist.] 1996, no writ). Although the amended Article 2.21 does not explicitly mention the single business enterprise doctrine, it does provide that, in contract cases, actual fraud is required to hold a shareholder liable on the basis of alter ego, sham to perpetrate a fraud, "or other similar theory." The Court concludes that single business enterprise is such a "similar theory." See TEX. BUS. CORP. ACT ANN. art. 2.21 Comment of Bar Committee. Furthermore, subsection B of Article 2.21, also added by the post-Castleberry amendments, provides that the liability created by the statute "is exclusive and preempts any other liability imposed on [a corporate shareholder] ... under common law or otherwise."

The obvious intent of Article 2.21, as amended, is to require a plaintiff in a contract

4

case to establish actual fraud before a court may disregard the corporate entity — on whatever theory — and impose joint liability on the corporation and its owner(s). Here, WSL is a shareholder of Western USA; NorDar is asking the Court to impose liability on WSL for a contractual obligation of Western USA. In light of Article 2.21 and the cases cited above, the Court concludes that it is an essential element of NorDar's case against WSL to establish that an actual fraud was perpetrated on Commerce Savings (NorDar's predecessor-in-interest) for the direct, personal benefit of WSL.[2]

## III. No Sufficient Evidence of Actual Fraud

Having determined that actual fraud is a necessary element in order to disregard the corporate entity and impose liability on WSL, the Court turns to the evidence relating to fraud. The Court concludes that the evidence presented at trial is wholly inadequate to establish that a fraud was perpetrated against Commerce Savings. There is simply no evidence that either WSL or Western USA made a materially false representation on which Commerce Savings relied to its detriment. NorDar argues that WSL and Western USA committed fraud by failing to inform Commerce Savings that Western USA had insufficient assets to meet a $1.1 million obligation.

---

[2]    The cases relied on by NorDar do not lead to a different conclusion. NorDar relies most heavily on Mancorp, Inc. v. Culpepper, 802 S.W.2d 226 (Tex. 1990), a "post-amendment" case on alter ego from the Texas Supreme Court. NorDar observes that, despite an extensive discussion of the doctrine, Mancorp does not mention actual fraud as a necessary element of an alter ego claim. This Court does not find that omission persuasive since Mancorp was decided before the 1991 legislative amendments, which explicitly clarified that alter ego liability was intended to be subject to the actual fraud requirement of Article 2.21(A)(2). NorDar also cites Beneficial Personnel Servs., Inc. v. Rey, 927 S.W.2d 157 (Tex. App.—El Paso 1996), judgment vacated and case remanded in light of settlement, 938 S.W.2d 717 (Tex. 1997), for the proposition that actual fraud is not required to impose joint corporate liability under the single business enterprise theory. However, Beneficial Personnel is primarily a tort case; by the terms of the Article 2.21 amendments, actual fraud is required only in contract cases. Therefore, Beneficial Personnel is inapposite.

Specifically, NorDar points to a Western USA Consolidated Financial Statement (Plf. Ex. 15)

which, NorDar maintains, misleadingly glosses over the fact that Western USA had limited liquid

assets at the time of the 1991 renewal transaction.  However, there is no definitive evidence that

this Consolidated Financial Statement, or any other such financial document, was actually

presented to Commerce Savings.  Moreover, despite NorDar's characterization, there is no

evidence that the Financial Statement or any other representation by Western USA was false in

any material way.  Finally, there is absolutely no evidence of reliance by Commerce Savings on

the Financial Statement or any other representation of any party to the 1991 renewal transaction.

Based on the absence of any evidence, the Court concludes that NorDar has failed to establish

that actual fraud was perpetrated on Commerce Savings for the direct, personal benefit of WSL.

## IV.  Conclusion

Since actual fraud is a necessary element of NorDar's claim and there is no evidence to

support that element, NorDar's claim against Western Securities Ltd. necessarily fails.  Judgment

will be entered accordingly.

SO ORDERED.

DATED: July _10_, 1997.

BAREFOOT SANDERS, SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

6